Courter *v.* Crescent Sewing Machine Co.

---

ALBERT C. COURTER, complainant and respondent,

*v.*

THE CRESCENT SEWING MACHINE COMPANY, defendant and appellant.

[Filed March 6th, 1900.]

1. By a sealed agreement in writing the holder of letters-patent of the United States made a covenant for himself and his assigns not to permit the use of the invention without affixing to the manufactured article a certain style of label of which the covenantee should have the exclusive sale; which agreement was duly recorded in the patent office. The patent was afterwards assigned by writing referring to and excepting the rights of the covenantee; which assignment was duly recorded. The assignee gave general licenses to use the patent.—*Held*, that a court of equity has no jurisdiction to compel the assignee to answer for any loss of profits sustained by reason of failure of licensees to purchase and affix the labels. (*a*) Because if the assignee was bound by the covenant, so were the licensees who were equally chargeable with notice, and there was no inequity in not expressly obligating them to perform it; (*b*) because the covenant was collateral only and did not encumber the patent; (*c*) because even on a direct covenant relating to the use of personal property a court of equity can only give restrictive relief.

2. A bill for discovery and relief in which no case for relief is made cannot be sustained for discovery alone.

On appeal from an order advised by Vice-Chancellor Reed, whose opinion is reported in *43 Atl. Rep. 570.*

Mr. *Charles L. Corbin*, for the appellant.

Mr. *James E. Howell*, for the respondent.

The opinion of the court was delivered by

COLLINS, J.

This appeal is from an order overruling a demurrer filed by the Crescent Sewing . Machine Company; to a bill exhibited October 24th, 1898, in the court of chancery, against said company and Welcome P. Gammons, Jr., by Albert C. Courter. The demurrer is general for want of equity in the bill.

The bill contains in substance only the following averments of fact that must be taken as admitted by the demurrer: Welcome P. Gammons, Jr., held letters-patent of the United States for a method of sewing sweat-bands into hats. It was necessary in some way to indicate on each hat the date of the patent. Albert C. Courter was a manufacturer of hatter's supplies, including adhesive paper labels called "size-marks," designed to be applied to sweat-bands, in order to indicate the size of hat. On December 8th, 1892, Courter and Gammons agreed, in writing and under seal, that Courter should make a size-mark combining the size of hat and date of the Gammons patent and should have the exclusive sale of such size-marks, at five cents per thousand, to users of machines covered by the patent, during its full period, and that Gammons, "his heirs, assigns or lessees," should not permit anyone to use such machines without applying such size-marks to all hats manufactured, and should protect Courter in the sale of the size-marks to the users of the patented method and allow and authorize the use of the patent-date and protect against infringement of patents. On January 25th, 1893, this agreement was duly recorded in the patent office. In March, 1893, Gammons organized the Crescent Sewing Machine Company as a New Jersey corporation, and became and still is one of its directors and its president. On March 13th, 1893, Gammons assigned to that company his letters-patent and all his rights in the invention covered thereby and to any improvements thereon, and warranted the title to the patent, invention and improvements against all persons "excepting, however, the rights of one Albert C. Courter, pursuant to an agreement between himself and myself dated December 9th, 1892, and heretofore recorded in the office of the commissioner of

patents in Washington." The company had actual notice of the agreement with Courter. Since March, 1893, the company has been engaged in the business of licensing manufacturers of hats to use the invention of Gammons and has made and is making profits from its licenses and has in its possession a true record of the number of hats sewed by its licensees. Courter has no information and the company refuses him information as to the number of hats sewed by such licensees and has no means except by inspection of the company's books of ascertaining who are such licensees and how many hats have been sewed under their licenses.

It is set up in the bill, by way of assertion of right, that, by reason of such assignment to it, the company became bound to perform the covenant of Gammons and that it was the duty of Gammons and the company to obligate licensees to purchase and use Courter's size-marks and pay therefor five cents per thousand; it is averred, on information and belief, that they did not so obligate the licensees, and therefore it is insisted that the complainant is entitled to receive from the company five cents for every thousand size-marks that might have been used by its licensees on hats sewed by them by the patented method, less the cost to him to manufacture the same.

The prayer of the bill is for answer without oath, for the discovery of the names of all licensees of the patented method and of the number of hats sewed by such method and of royalties received, for leave to take copies or abstracts from the books showing the transactions with such licensees, for an account and payment of the amount due the complainant and for general relief.

It is nowhere in the bill alleged that anyone has ever sewed a band upon a hat by the Gammons patented method without applying one of Courter's size-marks. Inasmuch as that was the extent of Gammons' covenant it would seem that no case for equitable aid is presented. If we may infer an allegation that Courter's size-marks have not been used, still no such case is presented on the complainant's own contention. That contention, as to the Crescent company, is that notice of Gammons'

covenant bound his assignee, the company, to perform it. If
that be so then, as in the assignment of the patent, the rights
of Courter were referred to and excepted, every licensee under
the company was also chargeable with notice of the covenant
and so is bound to perform it. Hence the company's issuing
of licenses without *expressly* obligating the licensees to perform
is no inequity. The covenantee has as complete a remedy, legal
or equitable, against each licensee as he would have had if the
company had, in terms, required performance by the licensee.

Upon another ground also this bill must fall. Gammons'
covenant was collateral only. It did not lessen his right in his
patent; he remained sole owner of that and free to use it as he
chose. A direct covenant, although relating solely to personal
property, may perhaps bind the covenantor's assigns having
notice of the covenant. The case relied on by the learned vice-
chancellor—*De Mattos* v. *Gibson, 4 De G. & J. 276*—is to that
effect. A vessel had been chartered for a voyage and subse-
quently mortgaged to one who had notice of the charter party.
The lords-justices of appeal, reversing a vice-chancellor, ordered
a preliminary injunction restraining the mortgagee, who had
taken possession of the vessel, from interfering with the char-
tered voyage. On final hearing, because of laches of the com-
plainant, the injunction was dissolved and the bill dismissed,
but even if we take the *dictum* of the provisional ruling for
injunction as authoritative, the case presented was not at all
analogous to that before us. The charter party was a contract
directly involving the vessel itself, not a collateral undertaking.
A covenant by the owner of the vessel always to employ the cove-
nantee as outfitter and a failure by the mortgagee to do so,
would have presented a parallel to the case in hand. I cannot
think that in such a case the English court of chancery would
have taken jurisdiction.

But it will be noticed that the jurisdiction that was enter-
tained was altogether restrictive. The court disavowed any power
to compel specific performance of the charter party or to award
damages for non-performance. The doctrine of the case, as de-
clared by the head-note of the reporters, is that

"where property either movable or immovable is disposed of with notice of a prior contract, entered into by the person disposing of it, for its use in a particular manner, the person taking it with such notice may be restrained from using it otherwise."

In the bill before us the complainant does not seek injunction. He prays, with incidental discovery, for an account and damages for loss of profits. For such relief there is no precedent and no equitable support.

The bill, of course, cannot be maintained for discovery alone, no case for relief having been made. *United New Jersey Railroad and Canal Co.* v. *Hoppock, 1 Stew. Eq. 261, 264,* and cases cited.

The demurrer should have been sustained and the order overruling it must be reversed.

*For reversal*—The Chief-Justice, Dixon, Garrison, Lippincott, Ludlow, Collins, Adams, Nixon, Vredenburgh—9.

*For affirmance*—Depue, Gummere, Krueger, Hendrickson—4.